IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARKEL AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:22CV915 |
| AMY MCRAE and RICHARD MCRAE, | ) ) ) | |
| Defendants. | ) | |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Markel American Insurance Company ("MAIC"), brought this action under the court's admiralty jurisdiction against Defendants, Amy McRae ("Ms. McRae") and Richard McCrae ("Mr. McRae") (collectively "Defendants"), seeking a declaratory judgment action against Defendants related to a maritime insurance policy that Plaintiffs issued. (*See* Compl., Docket Entry 1.) Thereafter, Defendants filed an Answer, and both parties conducted discovery. (*See* Docket Entries 15, 20.) Plaintiff also filed a Motion for Summary Judgment, which has been fully briefed and is ripe for consideration. (*See* Docket Entries 30, 35, 40, 44.) Additionally, Plaintiffs filed a Motion to Seal Transcript regarding the deposition transcript of Robert Varnell, one of Plaintiff's employees, because they allege that the transcript contained confidential, business information. (*See* Docket Entry 40-2, 42.) The Motion to Seal Transcript has been briefed by Plaintiffs, is consented to by Defendants, and is ripe for consideration. (*See id.*) For the reasons stated below, the undersigned recommends that

1

Plaintiff's Motion for Summary Judgment be granted and orders the Motion to Seal Transcript be granted.

I.  **BACKGROUND**

Defendant Amy McRae contacted MAIC through an insurance broker in April 2022 and applied for a marine insurance policy for a newly purchased boat. (*See* Compl. ¶ 7; *see also* Docket Entry 15 ¶ 7.) After reviewing the application, MAIC issued a policy for $580,000, which Ms. McRae signed on behalf of herself and her husband, Defendant Richard McCrae. (*See* Docket Entry 1 ¶ 8; *see also* Docket Entry 15 ¶ 8.) A few months later, while Mr. McRae and a friend were using the boat, it crashed into the Georgetown Rock Jetties in Georgetown, South Carolina. (*See* Docket Entry 1 ¶ 12; *see also* Docket Entry 15 ¶ 12.) In response, Defendants filed an insurance claim, and Plaintiffs opened an investigation into the matter. (*See* Docket Entry 1 ¶ 13; *see also* Docket Entry 15 ¶ 13.)

As part of their investigation, Plaintiffs allege that they uncovered several discrepancies and nondisclosures in Defendants' representations in their application. (*See* Docket Entry 1.) Specifically, Plaintiffs note that several "Eligibility Questions" on the application were answered incorrectly. (*See id* ¶¶ 21-22.) They allege that the answers to these questions misrepresented that: (1) Mr. McRae did not have a previous felony conviction, though, in truth, he had been convicted of a felony; (2) Mr. McRae's license had not been suspended within the past three years, though, in truth, his license had been suspended; (3) the boat had been insured during the 30 days prior to the application submission, though, in truth, it had not been insured for the entire period; and (4) another insurance company had not refused insurance on the boat in the past three years, though, in truth, another insurance company had

rejected Defendants' application. (*See id.* ¶¶22(a)-(d).) In addition to these errors, Plaintiffs also allege that (5) Mr. McRae had recently received a ticket for a motor vehicle violation, but Defendants did not disclose the violation. (*See id.* ¶ 23.) Plaintiffs contend that the omissions and errors in the application were material to their decision to issue the policy, and therefore Defendants breached the terms of their insurance policy by not disclosing them. Thus, they request that the Court find that the policy is void. (*See id.* ¶ 27.)

In their Answer, Defendants contend that admiralty law does not apply, and instead the claims should be controlled by N.C. Gen Stat. § 58 and N.C. case law. (*See* Docket Entry 15 ¶ 3.) As to the alleged misrepresentations, they allege that Ms. McRae answered all the questions on the application as "she honestly understood to be the proper response[s]." (*Id.* ¶ 22a.) As to Mr. McRae's prior felony conviction, Defendants claimed that Ms. McRae did not know that Mr. McRae had been convicted of a felony. (*Id.* ¶ 15.) Next, Defendants claim that Mr. McRae's license suspension was based on an administrative error and should not have been suspended. (*Id.* ¶ 22b.) Third, Defendants claim that Ms. McRae "was aware that the prior insurance application had been rejected because of a ticket, however, communications were through an insurance broker, who to her knowledge was simply attempting to obtain coverage for the Defendants." (*Id.* ¶ 22c.) They also claim that Ms. McRae did not believe that Mr. McRae's motor vehicle violations held any implications for the boat's insurability. (*Id.*) Fourth, as to the lapse in the boat's insurance, Ms. McRae alleged that "[s]he did not understand this question and there had been no operation of the boat nor damage to the boat during that limited period of time when there was no insurance on the vessel." (*Id.* ¶ 22d.)

3

Fifth, as to Mr. McRae's moving violation, Ms. McRae claimed she was not aware that her husband had received any moving violations within the past three years. (*Id.* ¶ 23.)

Defendants raised five affirmative defenses as follows: (a) the terms and provisions of of the insurance policy preclude any declaratory judgment or finding that the policy is void; (b) Defendants lack information and knowledge in regards to the errant questions "propounded by the insurance agent in the applications for insurance" and none of the responses were material; (c) waiver and estoppel due to the fact that all answers were provided "to the best of Defendant Amy McRae's knowledge"; (d) the given responses "do not affect the risk or insurability of Defendants' Boat" and; (e) "Defendants plead the negligence of the Plaintiffs' agents and employees, related to communications with the insured Defendants." (*Id.* at 5-6.)[1]

## II. DISCUSSION

### a. Plaintiff's Motion for Summary Judgment

Plaintiffs move for summary judgment, realleging that the marine insurance policy should be voided because the policy was issued in reliance on the alleged misrepresentations made by Ms. McRae in the insurance application that are described above. (*See* Docket Entry 35 at 3-5.) Additionally, Plaintiffs allege another misrepresentation in their motion, namely that Ms. McRae stated that she would operate the boat about 95% of the time, but in actuality, Mr. McRae planned to be the operator 95% of the time.[2] (*Id.* at 4-5.) Plaintiffs further claim

---

[1] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[2] Additionally, Plaintiffs state that the Hull Identification Number ("HIN") was incorrectly entered on the policy. The boat was physically marked with the HIN YFY42104J617, but the policy noted that the HIN was YFY42105J617. (*See* Docket Entry 35 at 2, n. 1.)

4

that the court has admiralty jurisdiction and the doctrine of *uberrimae fidei* should be applied. (*Id.* at 16.) Under this doctrine, Plaintiffs allege that the policy should be voided because Defendants did not disclose all material facts. (*Id.* at 18-19.)

Defendants counter that Ms. McRae did not read the application or communicate with Mr. McRae regarding the application, but Plaintiffs saw fit to issue the policy anyway. (*Id.* at 4.) Further, regarding the felony conviction, they allege that Mr. McRae never "reviewed or personally responded to the Policy Application questions, and M[s.] McRae . . . was personally unaware of the conviction's existence." (Docket Entry 40 at 3.)

Next, Defendants assert that the issue regarding the suspension of Mr. McRae's license was due to an administrative error regarding an incorrect vehicle identification number, and his driving privileges have since been legally restored. (*Id.* at 4-5.) They claim there was no need for Mr. McRae's license revocation to be included in this section because it was improperly revoked. (*See id.* at 8.)

Third, regarding the misrepresentation concerning whether there had been a previous refusal of insurance, Defendants contend that their "communications . . . were made through [an insurance broker,] and the reason for the rejection was due to the errant license suspension." (*Id.* at 6.) Fourth, Defendants assert that their failure to disclose that the boat had not been insured prior to submitting the application was due to miscommunication with the former owner of the boat as to who would maintain insurance on the vessel while it was being stored during Mr. McRae's absence for work. (*Id.* at 6-7.)

As to the misrepresentation regarding Mr. McRae's undisclosed driving violation, Defendants argue that no additional information was provided in the application because it

5

was not requested, and MAIC did not seek any further clarification. (*Id.* at 7.) They also argue that the term "violation" fails to distinguish between vehicle accidents and lesser offenses. (*Id.*) Since "Mr. McRae's guilt had not been adjudicated at the time of the Policy Application's submission," Defendants claim that "it may or may not [have been] necessary for these offenses to be disclosed."[3] (*Id.* at 8.)

In sum, Defendants argue that these discrepancies evidence that there are still genuine issues of material fact for the court to determine, such as whether any of the errors would have impacted the insurer's decision to issue a policy, whether MAIC has previously issued insurance to someone with a prior felony conviction, and to provide clarification on what "violations" are material to the analysis.[4] (*See id.* at 9-10.)

### i. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F. 3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir.

---

[3] Defendants' Response does not appear to address the misrepresentation concerning who would operate the boat 95% of the time.

[4] In their Response, Defendants do not reallege their former argument that maritime law does not apply here. Regardless, the undersigned finds that the instant claim falls squarely under maritime and admiralty law. *See Catlin*, 778 F.3d 69, 80 (1st Cir. 2015) (explaining the nearly 200-year history of applying the doctrine to cases involving marine insurance); *see also New Hampshire Ins. Co. v. C'Est Moi, Inc.,* 519 F.3d 937, 938 (9th Cir. 2008) ("*Uberrimae fidei* is a longstanding federal maritime doctrine that applies to marine insurance contracts.").

1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting).

When making a summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49; *see Rogers v. N. Carolina Dep't of Pub. Safety,* No. 1:19CV417, 2022 WL 3283990, at *3 (M.D.N.C. Aug. 11, 2022), *report and recommendation adopted,* No. 1:19CV417, 2022 WL 4472958 (M.D.N.C. Sept. 26, 2022).

### ii. Uberrimae Fidei

` Under federal maritime law, an insurer can be excused from paying on a policy if the insured party has misrepresented or failed to disclose relevant facts. *See QBE Seguros v. Morales-Vazquez,* No. CV 15-2091 (BJM), 2018 WL 3763305, at *5 (D.P.R. Aug. 7, 2018), *aff'd,* 986

F.3d 1 (1st Cir. 2021). This duty of utmost good faith, known as uberrimae fidei, is only found in maritime law.[5] *See Catlin at Lloyd's v. San Juan Towing & Marine,* 778 F.3d 69, 75 n.6 (1st Cir. 2015).

The key inquiry is whether the insured "disclose[d] to the insurer all known circumstances that *materially* affect the risk being insured." *See Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 13 (2d Cir. 1986) (italics added). "Materiality is determined by considering whether, given the circumstances of the case, the information omitted could reasonably have affected the determination of the acceptability of the risk." *N. Am. Specialty Ins. Co. v. Savage,* 977 F. Supp. 725, 728 (D. Md. 1997) (quotations omitted). The inquiry considers all facts which "the insured has, or ought to have[] knowledge [of] . . . even though no inquiry be made." *Catlin (Syndicate 2003) at Lloyd's v. San Juan Towing & Marine Servs., Inc.*, 974 F. Supp. 2d 64, 78 (D.P.R. 2013) (quoting *Grande v. St. Paul Fire & Marine Ins. Co.,* 436 F.3d 277, 283 (1st Cir. 2006). If the insured party misrepresents a material fact in any way, they have breached their duty, even if the misrepresentation was unintentional, or due to "negligence, mistake, accident, or voluntary ignorance." *Steelmet, Inc. v. Caribe Towing Corp,* 747 F.2d 689 (11th Cir. 1984); *see also Catlin,* 778 F.3d at 83; *see also C'Est Moi, Inc.,* 519 F.3d at 938. Any such failure, "is attended with the rigorous consequences that the policy never attaches and is void, for the reason that the risk assumed is not the one intended to be assumed by the parties." *Steelmet, Inc.,* 747 F.2d at 695 (quotation omitted).

---

[5] Within the Fourth Circuit, there is a dearth of cases concerning the application of uberrimae fidei under maritime and admiralty law. Therefore, the undersigned will look to other circuits for guidelines on analysis and application.

Materiality is based on an objective standard and is satisfied if a particular fact or omission of a fact would "influence the mind of a prudent and intelligent insurer in determining whether it will accept the risk." *Halifax Trawlers, Inc.*, 495 F. Supp. 2d at 240. Equitable affirmative defenses do not apply under the doctrine of uberriae fidei. *See HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000); *see also Morales-Vazquez*, No. CV 15-2091 (BJM), 2018 WL 3763305, at *5.

Here, Plaintiffs contend that Defendants misrepresented or omitted six specific facts that are detailed above. In response, Defendants do not contest that the misrepresentations and omission were made. (*See* Docket Entry 40 at 14-15.) Instead, they explicate reasons for why the misrepresentations or omissions occurred and challenge their materiality.[6] While these explanations are informative, they do not withstand analysis under uberrimae fidei. Lack of knowledge does not excuse the insured party, neither does an unintentional misrepresentation or a mistake. *Halifax Trawlers, Inc.*, 495 F. Supp. 2d at 240; *see also C'est Moi, Inc.*, 519 F.3d at 538. Further, Ms. McRae acknowledges that she knew about her husband's license revocation, she simply didn't believe it was relevant. Such an omission is also not excusable under uberrimae fidei.

As to whether the misrepresentations were objectively material, the undersigned finds that they were. The first four misrepresentations were in response to queries marked

---

[6] First, they claim Ms. McRae did not have knowledge of her husband's prior felony conviction. Second, they argue that his license suspension was an error. Third, they argue that while Ms. McRae was aware that another insurance company had rejected their application, it was due to the erroneous license revocation. Fourth, they assert that there was a miscommunication between the former owner and Defendants that caused a lapse in coverage. Fifth, Defendants state their failure to disclose Mr. McRae's driving violations was because of their belief that his license suspension was an error and were unsure what was meant by a "violation" since there had been no adjudication as to his guilt. (*See generally* Docket Entry 40.)

"Eligibility Questions" on the policy application, indicating that these questions were needed to determine a prospective party's eligibility for insurance and any accompanying risk that would be assumed by the insurer. These inquiries, which include Defendants' driving and criminal history, along with the boat's insurance history, are reasonably part of the analysis for any prudent insurer. *See St. Paul Fire & Marine Ins. Co. v. Abhe & Svoboda, Inc.*, 798 F.3d 715, 721 (8th Cir. 2015) (referencing *Countryside Casualty Co. v. Orr,* 523 F.2d 870 (8th Cir.1975), in which the court held that misrepresenting a history of traffic violations, arrests, and convictions for public drunkenness were material to insurability). Thus, the first through fourth misrepresentations made under the "Eligibility Questions" section on the application are de facto material. Additionally, the undersigned finds that the fifth and sixth misrepresentations, concerning past moving violations and who would primarily operate the boat, are also inherently material to the eligibility analysis, and Defendants had a duty to accurately disclose those additional facts.

Having found that the Defendants' misrepresentations are material, the undersigned finds that there are no genuine issues of material fact remaining for a factfinder to adjudicate. Thus, the undersigned recommends that the policy be found void and Plaintiff's Motion for Summary Judgment be granted.

### b. Plaintiff's Motion to Seal Transcript

Plaintiffs filed a Consent Motion to Seal Transcript and an accompanying brief, arguing that the transcript of Robert Varnell, an underwriting representative for Plaintiff, contains underwriting policies, procedures, practices, and other proprietary information that is of a confidential nature relating to Plaintiff's business practices. (*See* Docket Entries 42-43.)

10

Defendants did not file a response brief, but Plaintiff indicated that Defendants consented to the requested relief. (*See* Docket Entry 42 at 1.) Under Local Rule 5.4, "[n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support." M.D.N.C. L.R. 5.4(c)(3). "Failure by a party claiming confidentiality to file materials in support of a request to seal 'will result in denial of the motion to seal and unsealing of the materials without further notice.'" *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.,* No. 1:20-CV-425, 2023 WL 6282921, at *37 (M.D.N.C. Sept. 26, 2023) (quoting L.R. 5.4(c)(3)).

When evaluating a motion to seal, the Court must notify the public and allow for "a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing, and if it decides to seal it must state the reasons (and specific supporting finds) for its decision and the reasons for rejecting alternatives to sealing." *Virginia Dep't of State Police v. Washington Post,* 386 F.3d 567, 576 (4th Cir. 2004). Next, the Court must determine whether the parties' justification in the motion to seal and response sufficiently overcomes the common law and First Amendment rights of access and whether there are any alternatives to sealing. *See Guessford v. Pennsylvania Nat'l Mut. Cas INS. Co,.* No. 1:12CV260, 2014 WL 12594127, at *3 (M.D.N.C. Sept. 30, 2014). "[T]he public has a First Amendment right to access documents filed in connection with a motion for summary judgment in a civil case." *White v. City of Greensboro*, 532 F. Supp. 3d 277, 302 (M.D.N.C. 2021), *on reconsideration in part,* 586 F. Supp. 3d 466 (M.D.N.C. 2022) (citing *Washington Post,* 386 F.3d at 578).

However, when the "public's right of access is outweighed by competing interests," it is within the Court's discretion to seal the documents. *In re Knight Publ'g Co.,* 743 F.2d 231, 235 (4th Cir. 1984); *see also Anderson v. Diamondback Inv. Grp., LLC*, 661 F. Supp. 3d 415, 429 (M.D.N.C. 2023). "Restrictions on the public's right of access may be appropriate when access to judicial records could provide a source of business information that might harm a litigant's competitive standing." *Syngenta Crop Prot., LLC v. Willowood, LLC,* No. 1:15-CV-274, 2017 WL 6001818, at *2 (M.D.N.C. Dec. 4, 2017) (quotation omitted). "A corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records." *Id.* (quotation omitted).

Here, the Motion to Seal Transcript has been publicly docketed for more than two months, which has provided the public with sufficient opportunity to challenge the request. The information that Plaintiff seeks to seal is proprietary, confidential business information concerning how claims are processed. Further, the request to seal only pertains to one document.[7] Accordingly, having complied with the First Amendment notice requirements, the undersigned finds that the public's right of access is outweighed by the confidential, business nature of the transcript and thereby orders that the Motion to Seal Transcript be granted and the Court permanently seal the Transcript.

---

[7] Additionally, Plaintiffs have provided Mr. Varnell's affidavit, which contains information that could assist the public in their understanding of the claims regarding summary judgment. (*See* Docket Entry 35-2.)

12

Case 1:22-cv-00915-CCE-JLW   Document 46   Filed 01/05/24   Page 12 of 13

### III. CONCLUSION

Therefore, for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket Entry 30) be **GRANTED. IT IS HEREBY ORDERED** that Plaintiff's Motion to Seal Transcript (Docket Entry 42) be **GRANTED**. The Clerk is directed to permanently seal the deposition of Robert Varnell (Docket Entry 40-2).

/s/ Joe L. Webster<br>
United States Magistrate Judge

January 05, 2024
Durham, NC